

Minute Order, Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2203 | **DATE** | 4/29/2004 |
| **CASE TITLE** | Green vs. Harrah's IL Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment is granted with respect to Counts V and VI(a). Counts I, II, and VI(c) are dismissed. The Court declines to exercise jurisdiction over Plaintiff's state-law claims.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | APR 3 0 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 37 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TH ✓ | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHNNY L. GREEN, | ) | |
| | ) | **DOCKETED** |
| Plaintiff, | ) | |
| | ) | APR 3 0 2004 |
| v. | ) | |
| | ) | |
| HARRAH'S ILLINOIS CORPORATION, | ) | |
| SHERRY TORRENS, individually and | ) | |
| as an agent of HARRAH'S ILLINOIS | ) | |
| CORPORATION, TONY CAPRETTI, | ) | |
| individually and as an agent of HARRAH'S | ) | No. 03 C 2203 |
| ILLINOIS CORPORATION CHARLES | ) | |
| ANDREWS, individually, and as an agent | ) | |
| of HARRAH'S ILLINOIS CORPORATION, | ) | |
| CITY OF JOLIET, a municipal corporation, | ) | |
| Police Officer, RICHARD OLSON, Star | ) | |
| Number 292, individually and as agent of | ) | |
| CITY OF JOLIET, Police Officer TOMAS | ) | |
| PONCE, Star Number 160, individually and | ) | |
| as agent of CITY OF JOLIET, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendant Harrah's Illinois Corporation's ("Harrah's") employees detained Plaintiff Johnny Green on the night of May 7, 2002 after he allegedly urinated on the floor of the casino. After Harrah's detained him in a holding cell, Joliet police officers arrested Plaintiff and took him to the Joliet Police Department, where he was held and released in less than an hour. Plaintiff filed an eight-count complaint, alleging violations of state and federal law, against Defendants Harrah's, Sherry Torrens, Tony Capretti, Charles Andrews, the City of Joliet, Officer

37

Richard Olson, and Officer Tomas Ponce.[1] Defendants Harrah's, Torrens, and Capretti moved for summary judgment on all remaining counts. For the reasons discussed below, Defendants' motion is granted with respect to Counts V and VI(a).[2] The Court dismisses Plaintiff's remaining state-law claims for lack of subject matter jurisdiction.

## BACKGROUND [3]

On May 7, 2002, Sherry Torrens was working as a cocktail waitress in the slot machine area at Harrah's Joliet Casino in Joliet, Illinois. Tony Capretti was working as a security guard, and Chuck Andrews was working as the security shift manager, managing Capretti.

While cleaning in the slot machine area that evening, Torrens observed Mr. Green urinating on the casino carpet. Torrens walked around the slot machines in order to verify her observation and to be sure Green was not spilling or pouring out a drink. A few seconds later, from a different vantage point, Torrens noted that the stream of urine was still flowing. Torrens concluded that Green was urinating on the carpet.

Torrens notified Tony Capretti, who was stationed in her area, that she had observed a

---

[1] On September 22, 2003, the Court granted the stipulation to dismiss the City of Joliet, Richard Olson, and Tomas Ponce. Defendants Harrah's, Capretti, Torrens, and Andrews remain parties to this litigation.

[2] Plaintiff's complaint alleges three separate claims labeled "Count VI." The Court will refer to them as Counts VI(a), VI(b), and VI(c) in the order of their appearance in Plaintiff's complaint. Count VI(a) is Plaintiff's federal civil rights conspiracy claim against all Defendants. Count VI(b) was a state claim against the City of Joliet, now dismissed, and Count VI(c) is a state-law claim against Harrah's.

[3] The following statement of facts represents the facts that have been properly presented to the Court in connection with this motion. For reasons discussed under Legal Standards, Section II, below, Plaintiff has failed to properly place certain facts before the Court for consideration of this motion.

2

patron urinating in the casino. When Capretti went to the area Torrens had observed Plaintiff urinating, Plaintiff and his wife were no longer there. Torrens identified Plaintiff as an African-American man in his late forties wearing a blue shirt and accompanied by a woman. Capretti observed a dark spot on the carpet where Torrens indicated the urination had occurred. Observing the liquid on a towel, Capretti concluded that it looked like urine. Torrens went downstairs to make a written statement about the incident.

A Harrah's security guard informed Charles "Chuck" Andrews of the situation. Andrews approached Plaintiff and, after speaking with Torrens, escorted him from the casino floor. Andrews informed Plaintiff that a witness had seen him urinating on the floor. Andrews took Plaintiff downstairs and placed him in a holding cell before calling Joliet police. Officer Richard Olson arrived and spoke with Torrens. He found her to be a credible witness, and subsequently placed Plaintiff under arrest. Because Olson's vehicle was not appropriate for custody of detainees, Officer Tomas Ponce came to Harrah's to take Plaintiff to the police station.

Harrah's video surveillance of the incident shows only that Harrah's employees had approached Plaintiff, taken him downstairs, and held him in a small room until the police arrived. The video does not show Plaintiff urinating on the casino floor.

## LEGAL STANDARDS

### I. Summary Judgment

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence

3

is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica,* 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986). A party will successfully oppose summary judgment only if it presents "definite, competent evidence to rebut the motion." *Equal Employment Opportunity Comm'n v. Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir. 2000). The Court "considers the evidentiary record in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.,* 282 F.3d 467, 471 (7th Cir. 2002).

## II. Local Rules and Standing Orders

### A. Local Rule 56.1

Local Rule 56.1(b)(3)(B) requires a party opposing summary judgment to file a statement containing "a response to each numbered paragraph in the moving party's statement," and warns that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Plaintiff cited this rule and then ignored it. Claiming that Defendants' organization and presentation of fact made it "impossible" for Plaintiff to present his responses as required by the rule, Plaintiff did not even attempt to respond with any specificity to Defendants' statement of facts. Instead, Plaintiff filed a statement of 242 additional facts, giving no indication of which statements correspond to any particular statement of fact by Defendant. Defendant's statements of fact were not improper under Rule 56.1, and Plaintiff was bound by the rules of this Court to respond to each paragraph.

4

Instead, Plaintiff's submission declares to the Court, in essence: it's somewhere in here — find it. The resulting disorder is precisely what the requirements of Local Rule 56.1 seek to avoid.

### B. Limit on Statements of Fact

Plaintiff also ignores the Court's standing order: "[t]he respondent shall be limited to 50 statements of undisputed material facts without prior leave of the Court." Without seeking leave from the Court — prior or otherwise — Plaintiff submitted 242 statements of fact in response to Defendant's motion. In lieu of seeking leave, Plaintiff merely asserted that "[t]he Defendants' citation of disputed facts in the light most favorable to them has also made it impossible for the Plaintiff's statement of facts to be 'concise.'" (R. 30-1, Pl.'s Resp. to Def.'s Mot. for Summ. J., p. 2.) Plaintiff has not provided any justification for submitting nearly five times the allowed number of statements of fact without seeking prior leave of the court. The local rules required Plaintiff to respond to each of Defendants' fifty-four statements of fact. Plaintiff's complete failure in that regard cannot be turned into an excuse for inundating the Court with duplicative and excessive statements of fact.[4]

Nonconformity with the Local Rules and the standing orders of the Court are not without consequence. Plaintiff is represented by an experienced lawyer who is presumed to be aware of these rules. Plaintiff has plainly flouted his responsibility under this Court's rules.[5] Accordingly,

---

[4] Plaintiff has also failed to comply with Local Rule 7.1. Local Rule 7.1 clearly states that "[n]either a brief in support of or in opposition to any motion . . . shall exceed 15 pages without prior approval of the court. . . . Any brief or objection that does not comply with this rule shall be filed subject to being stricken by the court." Without seeking leave of the Court, Plaintiff filed a response brief that is 23 pages long.

[5] Two other interesting breaches of care by Plaintiff include: (1) attempting to introduce a phantom conspirator into this action, asserting in his brief opposing summary judgment that "Larson lied in his police report" in furtherance of his conspiracy with Harrah's employees

5

the Court will only consider the first fifty of Plaintiff's statements of fact, and the facts asserted in Defendant's statement of material facts are deemed admitted because they are not "controverted by the statement of the opposing party." Local Rule 56.1(b)(3)(B).

## ANALYSIS

### I. Section 1983 Claims for False Arrest

Plaintiff alleges that Harrah's, Capretti, and Andrews violated his civil rights under 42 U.S.C. § 1983 by subjecting him to an unlawful arrest. Plaintiff also asserts a conspiracy claim against all Defendants, alleging that the private defendants conspired with police officers to achieve the unlawful arrest of Plaintiff. To recover under either claim, Plaintiff must show that Defendants acted "under color of state law" in depriving Plaintiff of his federal right. *See Pickrel v. City of Springfield, Ill.*, 45 F.3d 1115, 1118 (7th Cir. 1995). Plaintiff must also show that Defendants detained him without probable cause. "An essential predicate to any § 1983 claim for unlawful arrest is the absence of probable cause." *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). Because there is no issue of material fact as to either of these issues, Plaintiff's claims fail as a matter of law.

#### A. State Action

With respect to the state action requirement, "there are two circumstances in which private citizens can be brought within the grasp of Section 1983 even though the statute is limited to acts under color of state law." *Proffitt v. Ridgway*, 279 F.3d 503, 507 (7th Cir. 2000). First, a "citizen may have conspired with a public employee to deprive the plaintiff of his constitutional

---

(Larson is the name of the police officer in the *Stewart* case, not in this action); and (2) including three Count VI's in an eight-count complaint.

6

rights." *Id.* (citing *Dennis v. Sparks*, 449 U.S. 24, 27-28, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980); *Brokaw v. Mercer County*, 235 F.3d 1000, 1016 (7th Cir. 2000)). Second, a citizen may have become a police officer *pro tem*, "deputized" to some extent by police officers seeking aid in enforcing the law.[6] *Id.*

Plaintiff has indeed argued that a conspiracy existed between Harrah's employees and officers of the Joliet police department. Specifically, Plaintiff contends Harrah's employees and officers Ponce and Olson acted together in "joint action" to violate Plaintiff's rights. In situations such as this, where private security guards detain individuals, courts have found joint action, or a conspiracy, between private actors and police when "the police allow the security guard's judgment about whether probable cause exists to be substituted for their own." *Stewart v. Harrah's*, No. 98 C 5550, 2000 WL 988193 at *9 (N.D. Ill. July 18, 2000).

In this case, there is no evidence that the police allowed such substitution of judgment. Under the facts admissible on this motion, Joliet police officer Olson talked to Sherry Torrens, whom he found to be a "credible witness." (R. 28-1, Def.'s Statement of Facts ¶ 47.) Officers Olson and Ponce both testified that Harrah's did not instruct them to arrest Plaintiff, and that a finding of probable cause is an independent determination of the police. (*Id.* at ¶ 49, 53.) There is no indication that Joliet police officers allowed the judgment of any Harrah's employee "to be substituted for their own." Without any substitution of judgment, there is no joint action. The actions of Harrah's employees and Joliet police officers did not, therefore, trigger protection

---

[6] In *Proffitt*, the court noted that rendering brief *ad hoc* assistance to a police officer does not convert a citizen into a state actor. *Proffitt*, 279 F.3d at 507. In this case, Harrah's employees detained Plaintiff while they waited for the police to respond to their complaint, but "[a] private citizen does not become a policeman by complaining to a policeman." *Id.* at 508.

7

under Section 1983.[7]

Even if Plaintiff's attorney had properly introduced his improperly submitted facts, Plaintiff fails to create a genuine issue of material fact as to whether the police officers allowed Harrah's employees to subjugate the officers' own judgment. Plaintiff cobbles together a conspiracy theory in which Harrah's employees reviewed and destroyed exculpatory video evidence in order to carry out the violation of Plaintiff's rights. Even assuming that Harrah's video coverage of the casino floor was complete, continuous, and seamless; and that Harrah's employees viewed exculpatory footage, there is no evidence that the surveillance video resulted in the Joliet police officers subordinating their own judgment to that of Harrah's employees. Indeed, once police officers believe that probable cause has been established, they "have no constitutional obligation to conduct any further investigation in the hopes of uncovering potentially exculpatory evidence." *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999) (internal citations and quotations omitted). After police decided that Torrens was a credible witness, they did not need to search for possibly exculpatory video evidence. The fact that police did not request such video evidence, therefore, does not indicate any subordination of their own judgment of probable cause.

Plaintiff also alleges that the police officers never spoke directly to Sherry Torrens. Even if these facts were properly before the Court, Plaintiff's assertions fail to create a genuine issue of material fact. In his statement of facts, Plaintiff admitted that on May 7, Torrens "spoke with a

---

[7] Plaintiff asserts that because Andrews said "we knew he was going to be charged with disorderly conduct for urinating on the floor," Harrah's employees must have had a conspiratorial agreement with Joliet police officers. Even if properly submitted, Andrews predictive statement does not indicate that police officers substituted Harrah's employees' judgment for their own.

8

police officer with a blue shirt." (R. 30-1, Pl.'s Statement of Facts ¶ 37.) Plaintiff then tries to controvert his own statement of fact through the deposition testimony of his private investigator, who testified that Torrens told him that she had never spoken with police officers. Plaintiff's attempted retraction of his own admission does not create a genuine issue of fact. There is no genuine question, therefore, as to whether Joliet police talked to Sherry Torrens before arresting Plaintiff. Having taken the testimony of a witness to the alleged urination, it is clear that Joliet police officers did not allow Harrah's security staff to determine probable cause for them. Even considering Plaintiff's improper submissions, therefore, Harrah's employees did not engage in joint action with Joliet police officers. Without joint action, Plaintiff has no claim against any remaining Defendant under Section 1983 for false arrest or conspiracy to violate Plaintiff's rights.[8] Accordingly, Defendant's motion for summary judgment is granted with respect to Counts V and VI(a).

**B.      Probable Cause**

Even if Plaintiff could show joint action between Harrah's employees and Joliet police officers, Plaintiff would have to show that Defendants had no probable cause to detain him. "An essential predicate to any § 1983 claim for unlawful arrest is the absence of probable cause." *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). The parties agree that Andrews and Capretti escorted Plaintiff to a casino holding area from which Plaintiff was not permitted to leave. There is no question that Harrah's employees detained Plaintiff. There is also no question that Defendants had probable cause to do so, and that summary judgment is appropriate in this case.

---

[8] The Court does not reach Plaintiff's theory of *respondeat superior* with regard to Harrah's.

9

*See Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 473 (7th Cir. 1997) ("[A] conclusion that probable cause existed as a matter of law is appropriate when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them.").

"In order to have probable cause for an arrest, law enforcement agents must reasonably believe, in light of the facts and circumstances within their knowledge at the time of the arrest, that the suspect had committed or was committing an offense." *Payne v. Pauley*, 337 F.3d 767, 776 (7th Cir. 2003). According to the facts properly before the Court, Sherry Torrens saw what she believed to be Plaintiff urinating on the casino floor.[9] She reported this to Capretti, who examined the purported urine spot on the carpet. Torrens made a written report, and Capretti and Andrews detained Plaintiff until police arrived. In light of these facts, Harrah's employees Capretti and Andrews reasonably believed that Plaintiff had committed a crime. There is no room for a difference of opinion as to whether these Defendants had probable cause to detain Plaintiff.

Even if the Court considered Plaintiff's improperly supported video-destruction argument, there is still no issue regarding whether Capretti and Andrews had probable cause to detain Plaintiff. Plaintiff's improper statements of fact assert that the men were informed that there was "no coverage" of the incident, and that "the video did not show the act." Plaintiff does not present facts — properly or otherwise — that either man knew or supposed the video

---

[9] Even considering Plaintiff's improperly submitted facts, there is no dispute that Torrens thought she saw Plaintiff urinating. While Plaintiff denies the act, he does not dispute that Sherry Torrens reasonably believed that he was urinating, or that security guards reasonably believed her report.

surveillance coverage to be complete and seamless. In the light most favorable to Plaintiff, therefore, these statements indicate that the video footage did not offer additional support for Torrens's eye-witness testimony. As stated above, however, probable cause does not require a search for exculpatory evidence once sufficient evidence of a crime is found. Accordingly, Capretti and Andrews had probable cause to detain Plaintiff.

Similarly, Joliet police officers Olson and Ponce had probable cause to arrest Plaintiff. The undisputed admissible evidence shows that Torrens spoke with police about Plaintiff's alleged casino urination, and that Officer Olson found her to be a credible witness.[10] Officer Olson arrested Plaintiff based on evidence he reviewed, not at the direction of Harrah's employees. In light of Torrens's testimony, the Joliet police had a reasonable belief that Plaintiff had committed a crime. Defendant has not effectively contested any of this evidence. Therefore, even if Plaintiff could establish that Harrah's employees participated in joint action with the Joliet police, Plaintiff's claims under Section 1983 would still fail because Defendants and the Joliet police had probable cause to detain and arrest Plaintiff.

## II. State Law Claims

42 U.S.C. § 1367(c)(3) allows a federal district court to decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction. Plaintiff's complaint alleged that the Court had subject matter jurisdiction over this action by virtue of 42 U.S.C. §§ 1981, 1983, 1985, and 28 U.S.C. §§ 1331, 1343(a), 1367(a), and the United States Constitution. Having resolved the only federal questions remaining in this

---

[10] As noted above, even considering Plaintiff's improperly submitted evidence, there is no question that Torrens talked to a police officer on the night of May 7.

11

action, the Court declines to exercise supplemental jurisdiction over the remaining claims arising under state law. Accordingly, Counts I, II, and Count VI(c) are dismissed.

## CONCLUSION

Defendant's motion for summary judgment is granted with respect to Counts V and VI(a) of Plaintiff's complaint. Counts I, II, and VI(c) are dismissed for lack of subject matter jurisdiction, as the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3).

Dated: April 29, 2004 ENTERED

AMY J. STUEVE
U.S. District Court Judge